IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YRC WORLDWIDE INC., )
)
              Plaintiff, )
)
v. ) Case No. 10-2106-JWL
)
DEUTSCHE BANK TRUST COMPANY )
AMERICAS, in its capacity as )
Indenture Trustee, )
)
              Defendant. )
)
_____)

## **MEMORANDUM AND ORDER**

Plaintiff issued notes that are governed by two indentures, and defendant serves as the indenture trustee ("the Trustee"). In this action, plaintiff seeks a declaration that the Trustee is required to sign supplemental indentures that omit certain provisions from the original indentures. The matter is presently before the Court on the parties' cross-motions for summary judgment (Doc. ## 20, 26). For the reasons set forth below, each motion is **granted in part and denied in part**. Plaintiff's motion is granted (and defendant Trustee's motion is denied) with respect to the deletion of section 5.01 of the original indentures. Defendant Trustee's motion is granted (and plaintiff's motion is denied) with respect to the deletion of section 3.08 of the original indentures.[1]

---

[1]The Trustee has filed a counterclaim for fees and expenses incurred in defending this action. That counterclaim is not affected by this ruling and remains unresolved.

**I. Undisputed Facts**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that the facts are not in dispute and that plaintiff's declaratory judgment action may be resolved on the cross-motions for summary judgment.[2] The undisputed material facts are as follows:

Plaintiff issued two sets of notes—denominated the 5.0% Net Share Settled Contingent Convertible Senior Notes due 2023 ("the 5.0% Notes") and the 3.375% Net Share Settled Contingent Convertible Senior Notes due 2023 ("the 3.375% notes")—subject to indentures executed in December 2004. The indentures provide that they are contracts to be construed under New York law. Section 3.08 of the indentures provides that, on any of three interim "Purchase Dates" (occurring in 2012, 2015, and 2020 for the 3.375% Notes, and occurring in 2010, 2013, and 2018 for the 5.0% Notes), upon election by the holder, plaintiff must repurchase the securities at a price equal to 100 percent of the principal amount (the "Purchase Price"), plus interest. Section 5.01 of the indentures provides that plaintiff may not merge into or transfer substantially all of its assets to another entity unless either plaintiff remains as the surviving entity or the surviving entity assumes plaintiff's obligations under the notes and the indentures.

---

[2]Although the Trustee asserted affirmative defenses in its answer, it does not dispute that plaintiff is entitled to summary judgment on its declaratory judgment action if the Court agrees with the arguments contained in plaintiff's summary judgment motion.

Section 6.07 of the indentures provides:

> Subject to the provisions of Article XI hereof [relating to the guarantees], notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of interest installments (including contingent interest, if any), the Principal Amount, Redemption Price, Purchase Price, Repurchase Change in Control Purchase Price or interest, if any, due on overdue amounts in respect of the Securities held by such Holder, on or after the respective due dates expressed in the Securities, and to convert the Securities in accordance with Article X or to bring suit for the enforcement of any such payment on or after such respective dates or the right to convert, shall not be impaired or affected adversely without the consent of such Holder.

Section 9.02 of the indentures provides that plaintiff, the guarantors, and the Trustee may amend or supplement the indentures with the consent of the holders of a majority of the outstanding principal, except that the consent of each holder affected (unanimous consent) is required to amend or supplement the indenture to "(a) change the Stated Maturity of the principal" or to "(d) impair the right to institute suit for the enforcement of any payment of principal." Finally, section 9.06 of the indentures requires the Trustee to sign any supplemental indenture authorized by the amendment provisions, if such amendment does not adversely affect the Trustee's rights, duties, liabilities, or immunities.

As part of a restructuring effort, plaintiff extended an offer to holders of these notes, under which holders could exchange the notes for equity in plaintiff while consenting to the deletion of section 3.08, section 5.01, and other provisions from the original indentures. Holders of more than 90 percent of each set of notes accepted the offer; thus, a majority consented to the deletions, but plaintiff did not receive unanimous

consent. Nonetheless, the Trustee refused to sign supplemental indentures that did not include original sections 3.08 and 5.01, on the basis of its position that those deletions require unanimous consent of the holders. Plaintiff subsequently brought this declaratory judgment action.

## II. Deletion of Section 3.08 from the Original Indentures

### A. *Section 9.02(a) Exception*

In seeking to delete section 3.08 from the original indentures, plaintiff is attempting to remove its obligation to repurchase the notes from electing holders for the "Purchase Price" on three specific interim "Purchase Dates". The Trustee first argues that deletion of section 3.08 from the original indentures by majority consent would violate section 9.02(a), which requires unanimous consent to "change the Stated Maturity of the principal." "Stated Maturity" is defined in the indentures to mean "the date specified in such Security as the fixed date on which an amount equal to the Principal Amount of such security is due and payable." The Trustee argues that because the "Purchase Dates" are fixed dates on which the principal may become due and payable from plaintiff, they fall within the definition of "Stated Maturity", and thus the proposed change to those dates (by way of deletion) requires unanimous consent.[3]

---

[3] Neither party argues that the indentures are ambiguous, and the parties agree that the indentures may be construed by the Court as a matter of law. *See Public Serv. Co. of Okla. v. Burlington N. R.R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) ("The
(continued...)

4

The Court does not agree that "Stated Maturity" as used in the exception in section 9.02(a) includes the "Purchase Dates" set forth in section 3.08. The definition of "Stated Maturity" does not make any reference to the three "Purchase Dates" (or any other dates on which plaintiff may become required to pay holders the principal under other provisions of the indentures), but refers only to "the fixed date" when the principal "is" (and not "may become") due and payable; thus, "Stated Maturity" plainly refers to the single date (in 2023) at the end of each note's term (notwithstanding the boilerplate provision in the indenture that words in the singular include the plural). This interpretation is confirmed by the indentures' consistent treatment of the "Stated Maturity" and the "Purchase Dates" as distinct concepts. For instance, section 2.08, which relates to outstanding securities, refers to the "Redemption Date, <u>Purchase Date</u>, Repurchase Change in Control Purchase Date <u>or Stated Maturity</u>, <u>as the case may be</u>." (Emphases added.) Similarly, section 6.01(b) defines an "Event of Default" to include plaintiff's default "in the payment of the <u>Principal Amount</u>, Redemption Price, <u>Purchase Price</u> or Repurchase Change in Control Purchase Price . . . when the same becomes due and payable at its <u>Stated Maturity</u>, upon redemption, <u>upon declaration</u>, <u>when due for repurchase by the Company</u> or otherwise." (Emphases added.) Section 11.01(a)

---

³(...continued)
interpretation of an unambiguous contract is a question of law to be determined by the court and may be decided on summary judgment.") (citations omitted); *see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277-78 (2d Cir. 1989) (noting that interpretation of unambiguous contract is matter of law for the court and setting out New York law for contract interpretation).

5

guarantees payment in full "when due, whether <u>at Stated Maturity</u>, by acceleration, call for redemption, <u>upon a Purchase Notice</u>, a Repurchase Change in Control Offer, purchase or otherwise." (Emphases added.) Finally, the notes themselves provide for payments "in respect of the Redemption Price, <u>Purchase Price</u>, Repurchase Change in Control Purchase Price and <u>the Principal Amount at Stated Maturity</u>, <u>as the case may be</u>. (Emphases added.) These provisions refute any suggestion that "Stated Maturity" was intended to included the three "Purchase Dates" set forth in section 3.08, for the reason that payment of the principal at the "Stated Maturity" and payment of the "Purchase Price" on the "Purchase Dates" are consistently stated and treated as separate and distinct payment obligations.

The exception in 9.02(a) requiring unanimous holder consent expressly applies to a change in the "Stated Maturity", but it does not also apply to a change in the "Purchase Dates". That omission must be given force, in light of the fact that in other places the indentures explicitly refer to both the "Purchase Dates" and the "Stated Maturity" when inclusion of both types of payment dates are intended. *See, e.g.*, *In re New York City Asbestos Litig.*, 838 N.Y.S.2d 76, 80 (N.Y. App. Div. 2007) (applying *expressio unius* canon of contract construction, by which the expression of one thing implies the exclusion of the other). The Court thus concludes as a matter of law that section 9.02(a) does not require unanimous consent for the deletion of section 3.08.

### B. *Compliance with Section 6.07*

In its original brief in opposition to plaintiff's motion and in support of its own

6

motion, the Trustee argued that the deletion of section 3.08 without unanimous consent would violate section 6.07, which largely tracks the language of section 316(b) of the Trust Indenture Act ("TIA"), 15 U.S.C. § 77ppp(b). Section 316(b) of the TIA provides as follows:

> Notwithstanding any other provision of the indenture to be qualified, the right of any holder of an indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder . . . .

*Id.* In its original brief, the Trustee argued that deletion of the repurchase provisions of section 3.08 would violate both the statute and section 6.07 of the indentures because it would impair or affect the holders' right to receive payment of the principal on or after the "due dates" expressed in the security—namely, the "Purchase Dates" set forth in section 3.08—without unanimous consent. In its reply brief, however, submitted after plaintiff's own reply brief, the Trustee argues for the first time that, whether or not the deletion would violate TIA § 316(b), the deletion would violate section 6.07 of the indentures, which specifically prohibits impairment of a holder's right to receive payment of the "Purchase Price" without consent.

In light of this new argument, plaintiff has filed a motion seeking leave to respond to the Trustee's reply brief (Doc. # 31). The Court agrees with plaintiff that the Magistrate Judge's order that set a schedule for the summary judgment briefing contemplates only three rounds of briefing—summary judgment motions and supporting

7

briefs by a certain date, response briefs by a second date, and reply briefs by a third date—and that the Trustee's reply brief (submitted after reply due date) therefore has not been authorized. In light of that fact and the new argument raised by the Trustee in the unauthorized brief, the Court **grants** plaintiff's motion for leave, and it has considered the supplemental arguments submitted by plaintiff. Moreover, because plaintiff has not moved to strike the Trustee's reply brief (or its cross-motion for summary judgment), because plaintiff has now had the opportunity to respond to the Trustee's argument, and because the argument has merit and is dispositive, the Court deems it appropriate to consider the Trustee's new argument based on section 6.07.

The Court agrees with the Trustee that section 6.07 prohibits the deletion of section 3.08 without unanimous consent of the holders. Although TIA § 316(b) refers only generally to impairment of the right to receive payment of the principal after "due dates" in the security, section 6.07 expressly prohibits impairment of the right to receive the "Purchase Price". *See Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1325 n.8 (10th Cir. 2008) ("While § 316(b) is mandatory for any qualified indenture, an indenture may provide the bondholders with rights in excess of those guaranteed by § 316(b).") (citing 15 U.S.C. § 77rrr(b)). Under the indentures, the term "Purchase Price" refers only to the principal received upon repurchase at the holder's election under section 3.08. Elimination of the right to receive the "Purchase Price" under section 3.08 would of course impair or affect the holders' right to receive the "Purchase Price" for purposes of

8

section 6.07.[4]  Therefore, deletion of section 3.08 requires unanimous consent of the holders.

Plaintiff argues that, by this logic, the Trustee should also have objected to the deletion by majority consent of section 3.09 of the indentures, which allows a holder to receive the "Repurchase Change in Control Purchase Price" in the amount of the principal in the event of a change in control of plaintiff, because section 6.07 also expressly applies to the "Repurchase Change in Control Purchase Price".  Plaintiff thus suggests that the Trustee's position in the litigation is inconsistent with its signing supplemental indentures that deleted section 3.09 without unanimous consent.  Plaintiff has not established, however, that the Trustee should be estopped or otherwise legally barred from enforcing the clear terms of section 6.07 of the indentures as they relate to section 3.08.  The Trustee may or may not be subject to liability to the holders for improperly agreeing to the deletion of section 3.09 (assuming that such agreement is irrevocable), but that possibility does not negate the necessary effect of section 6.07 in this case.

Accordingly, the Court concludes that section 6.07 of the indentures prohibits the deletion of section 3.08 without unanimous consent.  Because plaintiff did not obtain such consent, the Trustee was not required to sign supplemental indentures omitting

---

[4]Contrary to plaintiff's argument, section 6.07 does not apply only to changes that impair or affect the *amount* of payments from plaintiff; rather, the provision clearly applies to changes that affect the *right to receive* certain payments, including the "Purchase Price".

9

section 3.08, and the Trustee is awarded summary judgment on plaintiff's declaratory judgment action to that extent.

### C. *Compliance with Section 316(b) of the TIA*

The Court further concludes that, regardless of the broader terms of section 6.07 of the indentures, TIA § 316(b) would also apply here to prohibit deletion of section 3.08 without unanimous consent. As noted above, that statute prohibits the impairment of a holder's right to receive payment of the principal after the "due dates" without the holder's consent. *See* 15 U.S.C. § 77ppp(b). The Court agrees with the Trustee that because the holders have the right to receive payment of the principal on the "Purchase Dates" under section 3.08 of the indentures, those dates are "due dates" within the meaning of TIA § 316(b).

Plaintiff argues that the payments under section 3.08 should not be considered "due dates" for purposes of TIA § 316(b) because they are not absolute, but rather are contingent on a triggering event, namely the holder's election and compliance with section 3.08's notice and delivery requirements. The Court rejects this argument. From the point of view of the holder, section 3.08 grants the holder an absolute right to receive the principal on the "Purchase Dates". The fact that the holder is required to take certain actions, entirely at his own discretion, does not distinguish the "Purchase Dates" from the "Stated Maturity" at the end of the term or any other payment date, at which time the holder must, under the terms of the notes, take the additional step of surrendering his securities in order to receive payment.

10

Although relevant caselaw appears sparse, this interpretation is consistent with the court's ruling in *UPIC & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F. Supp. 448 (S.D.N.Y. 1992). Under the indentures at issue in *UPIC*, the issuing company was required to repurchase notes, at the holders' option, during buy-back periods associated with certain fixed dates. *See id.* at 450. The court rejected the issuing company's argument that TIA § 316(b) should not apply to that repurchase obligation. *See id.* at 454-56. The court noted that the securities did not contain any limitation on what would qualify as a payment of principal for purposes of TIA § 316(b), and that the securities simply provided alternative mechanisms (the repurchase provision and the provision for payment at the maturity date) pursuant to which the principal may become payable. *See id.* at 455-56. The court concluded that the repurchase right was essentially a demand obligation in favor of the holder to be exercised at fixed dates at the holder's sole discretion, and thus qualified as a right to receive payment of the principal after a "due date" to which TIA § 316(b) would apply. *See id.* at 456. In so concluding, the court noted that the legislative history and commentary "tends to evince Congress' intent to have Section 316(b) interpreted so as to give effect to the absolute and unconditional nature of the right to payment it affords a Secruity-holder." *Id.* at 455 (citations omitted).

Similarly, in the present case, section 3.08 of the indentures gives the holders the right, at their discretion, to receive payment of the principal at certain fixed "Purchase Dates". Under the reasoning of *UPIC*, which this Court finds persuasive, those dates

11

represent "due dates" on which the holders have the right to receive payment of the principal, such that TIA § 316(b) applies to require unanimous consent to the removal of that right.

Plaintiff attempts to distinguish *UPIC* by noting that the particular due date at issue had already occurred in that case, but the Court does not find that distinction to be relevant to the *UPIC* court's reasoning or decision. Plaintiff also cites to *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 859 F. Supp. 743 (S.D.N.Y. 1994), *aff'd in part and rev'd in part on other grounds*, 65 F.3d 1044 (2d Cir. 1995), and urges the Court to follow that case to the extent that it is in "tension" with *UPIC*. In *McMahan*, the holders could elect to receive payment upon the triggering event of a merger that was not approved by a majority of independent directors. *See id.* at 745-46. The court rejected the argument that TIA § 316(b) applied to that right of the holders, based on the following reasoning:

> Section 316(b) pertains to events of payment default where a company has failed to pay out on an indenture security after its maturity date or after an explicit date on which it has come due—in other words, when the right to payment becomes absolute and unconditional. *See UPIC*, 793 F. Supp. at 455 (discussing legislative history of § 316(b)).
>
> The only date of payment explicitly stated in the Debenture on which the right to payment becomes unconditional is the maturity date, July 1, 2006. Plaintiffs do not seek to enforce payment on the Debentures on or after this date; therefore, § 316(b) is not applicable to the instant situation. Plaintiffs' right to tender prior to the due date expressed in the Debenture is analogous to an acceleration of payment of principal and interest, the time of which is not certain and, indeed, may never come. . . . This reasoning holds true for the conditional right to tender, which is subject to a decision by the "Independent Directors," prior to the

12

> Debentures' due date.

*Id.* at 748 (footnote omitted). Plaintiff thus argues that, under *McMahan*, any conditional right to payment—including the right afforded by section 3.08, which requires the holder's election—does not implicate TIA § 316(b).

The Court does not agree that *UPIC* and *McMahan* are in tension, however. The court in *McMahan* actually cited *UPIC* with approval and then distinguished *UPIC* in a footnote as follows:

> The securities in [*UPIC*] became due and owing within a specific time period after a date certain and specified in the securities. *See* [*UPIC*], 793 F. Supp. at 450. Thus, § 316(b) applied in that situation.

*Id.* at 748 n.6. Thus, the *McMahan* court concluded that, because the securities in its case did not provide for payment at a specified date certain, as did the securities in *UPIC*, TIA § 316(b) did not apply. In this regard, the present case is more akin to *UPIC*, as section 3.08 of the indentures specify dates certain, the "Purchase Dates", on which the holders have the absolute right to receive payment of the principal, and *McMahan* therefore does not favor a contrary result here.

Accordingly, even if the Trustee's newly-raised argument based on section 6.07 of the indentures were not considered, the Court would nonetheless conclude that TIA § 316(b) prohibits the deletion of section 3.08 of the indentures without unanimous consent, and the Trustee is entitled to summary judgment on plaintiff's claim as it relates to the deletion of section 3.08 on that basis as well.

13

### III. Deletion of Section 5.01 from the Original Indentures

Plaintiff also seeks by majority consent to delete section 5.01 of the indentures, which provision bars plaintiff from merging or transferring substantially all of its assets unless the surviving entity (other than plaintiff) assumes plaintiff's obligations under the notes and indentures. The Trustee argues that such deletion must be by unanimous consent under TIA § 316(b) and section 6.07 of the indentures because it would impair the holders' right to payment on the notes and would impair their right to institute suit to enforce the payment obligation. The Trustee further argues that the deletion of section 5.01 would violate section 9.02(d) of the indentures, which also requires unanimous consent for an amendment that impairs the right to institute suit to enforce the payment obligation.[5]

The Trustee's basic argument under the statute and these provisions of the indentures is that if plaintiff could merge or transfer its assets without assumption of the payment obligation by the transferee entity, the holders would be denied direct recourse against the transferee for payment on the notes. The Trustee does not adequately explain, however, how that possibility presently affects the holders' legal rights to receive payment from and to institute suit against plaintiff, who would remain obligated

---

[5] Neither party has suggested any basis for construing or applying these provisions of the indentures any differently from the construction or application of TIA § 316(b) as it relates to the deletion of section 5.01. *See, e.g.*, *Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, 1999 WL 993648, at *5-7 (S.D.N.Y. Nov. 2, 1999) (applying together TIA § 316(b) and similar provision in the security).

under the notes and indentures if such a transfer did occur.

As authority for its position, the Trustee cites *Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999). In *Federated*, the challenged amendments would have resulted in a restructuring under which the issuer would have transferred all of its assets to subsidiaries and all guarantors would have been eliminated. *See id.* at *6-7. The court concluded (after noting the paucity of relevant caselaw) that the amendments likely impaired or affected the holders' right to sue for payment and thus likely violated TIA § 316(b) (for purposes of a preliminary injunction) because "as a practical matter" a holder would not be able to seek recourse either from the "assetless [issuer] or from the discharged guarantors." *See id.* at *7. Thus, the Trustee in the present case seems to be arguing from *Federated* that the deletion of section 5.01 requires unanimous consent because the holders may have difficulty recovering from plaintiff in the event that it ever transfers its assets.

The Court is not persuaded by the Trustee's citation to *Federated*. First, the Trustee has not shown how circumstances are similar in this case. For instance, the Trustee has not shown that, under the amendments approved by a majority of the holders, plaintiff is in fact divesting itself of all of its assets, thereby threatening the holders' ability to recover payment under the notes from plaintiff. Nor has the Trustee shown that holders would no longer have any recourse against the notes' guarantors. Thus, there is no basis to conclude in this case, as the *Federated* court did in its case, that the amendments necessarily leave the holders with no practical ability to receive

15

payments due under the notes.

Second, the Court finds more persuasive the reasoning of the court in *Magten Asset Management Corp. v. Northwestern Corp. (In re Northwestern Corp.)*, 313 B.R. 595 (Bankr. D. Del. 2004). In *Magten*, the court rejected the argument that the issuing company's insolvency impaired the holders' rights to receive payment in violation of TIA § 316(b), as follows:

> [The statute] applies to the holder's *legal* rights and not the holder's *practical* rights to the principal and interest itself. Plaintiffs' legal rights were not impaired. Again, there is no guarantee against default.

*See id.* at 600 (emphases in original). Moreover, the Tenth Circuit has quoted this same language from *Magten* relating to TIA § 316(b) with approval. *See Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1326 n.9 (10th Cir. 2008). In the present case, whatever its affect on the holders' ultimate ability to recover their investment, the deletion of section 5.01 does not affect the holder's *legal rights* to receive payments from plaintiff or the guarantors or to institute suit to enforce those payment obligations. As the *Magten* court and the Tenth Circuit have observed, TIA § 316(b) does not provide a guarantee against the issuing company's default or its ability to meet its obligations. Accordingly, the fact that the deletion of section 5.01 might make it more difficult for holders to receive payment directly from plaintiff does not mean that the deletion without unanimous consent violates TIA § 316(b), and the Court believes that the Tenth Circuit would so rule.

Therefore, the Trustee's motion for summary judgment is denied as it relates to

the deletion of section 5.01 of the indentures, and plaintiff is awarded summary judgment on its claim for a declaratory judgment requiring the Trustee to sign supplemental indentures that do not include that provision.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for leave to respond to defendant Trustee's summary judgment reply memorandum (Doc. # 31) is **granted**.

IT IS FURTHER ORDERED BY THE COURT THAT the parties' cross-motions for summary judgment (Doc. ## 20, 26) are **granted in part and denied in part**, as set forth herein. Plaintiff's motion is granted and defendant Trustee's motion is denied with respect to the deletion of section 5.01 from the original indentures. Judgment is awarded to plaintiff on its claim for a declaration that defendant Trustee is required to sign supplemental indentures without original section 5.01. Defendant Trustee's motion is granted and plaintiff's motion is denied with respect to the deletion of section 3.08 from the original indentures, and judgment is awarded to defendant on plaintiff's claim as it relates to that deletion.

IT IS SO ORDERED.

Dated this 1st day of July, 2010, in Kansas City, Kansas.

17

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge